# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LYNN MAY, | ) | |
| | ) | |
|    Defendant Below-Appellant, | ) | |
| | ) | |
|    v. | ) | C.A. No. N19A-07-002 VLM |
| | ) | |
| HILLCAP I, LLC AND HILLCAP II, | ) | |
| LLC, | ) | |
| | ) | |
|    Plaintiff Below-Appellee, | ) | |
| | ) | |
| | ) | |

## ORDER

Date Submitted: May 18, 2020
Date Decided: August 21, 2020

*Upon Consideration of Appellant's Appeal of the Decision of the Court of Common Pleas,*

**REVERSED** and **REMANDED**.

Donald L. Gouge, Jr., Esquire of Donald L. Gouge, Jr., LLC, Wilmington, Delaware. Attorney for Appellant.

David C. Zerbato, Esquire of Morton, Valihura & Zerbato, LLC, Wilmington, Delaware. Attorney for Appellee.

**MEDINILLA, J.**

1

# I.  INTRODUCTION

Tenant Appellant, Lynn May (May) appeals a decision from the Court of Common Pleas (CCP) that reversed a judgment in her favor pertaining to summary possession and back rent actions commenced by her landlord Appellee, Hillcap I, LLC and Hillcap II, LLC (Hillcap) in the Justice of the Peace Court (JP Court).  May argues CCP committed legal error by substituting its judgment and factual findings for that of the JP Court, leaving her without a legal remedy when it decided she had waived her right to file the motion to vacate a default judgment against her.  Hillcap argues the reviewing court was correct in its finding that the JP Court abused its discretion by failing to dismiss the action with prejudice where the parties had reached a settlement agreement.  Upon consideration of the arguments, evidence set forth by parties, oral argument, and the record in this case, the Court hereby finds as follows:

1.      Hillcap rented to May, a periodic tenant, a property at 802 Hillside Road in Wilmington, Delaware (the Property).  May claimed issues with the Property, including lack of useable drinking water during her tenancy as well as paint chips and black mold, allegedly not remedied by Hillcap.[1]  May contends she was unsuccessful in her attempts to resolve these problems with her own funds and as a

---

[1] Appellee's Hillcap I, LLC and Hillcap, II LLC's Answering Brief, Appendix [hereinafter "Appendix"] at A006 ¶¶ 3-4 [hereinafter "May's Mot. to Vacate"].

2

result withheld rent.[2]  On Mother's Day of 2017, Hillcap locked May out of the Property (lock-out).

2.      On July 7, 2017, Hillcap, represented by David C. Zerbato, Esquire, filed a civil action in JP Court seeking a judgment against May for back rent and possession of the Property.  Court papers were directed to the wrong address at *804 Hillside Road* instead of the Property.[3]  Both the required "five-day letter" attached to the Complaint that noticed rent due as well as May's notice to appear in court were also directed to the incorrect address.  On August 18, May wired a payment of rent in the amount of $3,800 to Hillcap.[4]  On August 23, 2017, the JP Court entered a default judgment against May for failure to file an Answer or appear for trial.[5]  On September 13, 2017, May was evicted.

3.      On September 20, May retained the legal services of Donald L. Gouge, Esquire, who immediately began negotiations with Mr. Zerbato to resolve the matter.  All pertinent communications between the attorneys were conducted via e-mail exchanges.  Mr. Gouge sent an initial e-mail indicating he "would not fight the

---

[2] May's Mot. to Vacate ¶¶ 3-4.
[3] Appendix at A001; A002.
[4] Two wires in the amount of $7,000 and $3,800 were made by May but only $3,800 was received by Hillcap.  *See* Appendix at A019 [hereinafter "Counsel's Sept. 21, 2017 E-mail"] (Mr. Gouge indicated that "[his] client wired to yours $10,800 on 8.18, two wires, one for $7K and one for $3800.  Can you confirm?"); *see also* Appendix at A020 (Mr. Zerbato indicated that "[t]he only payment [his] client received in August was a payment of $3,800 on 8/18.  [His] client also ha[d] a $4,800 security deposit [they could] apply.").
[5] Appendix at A004.

3

default (though [he thought] that there may [have been] grounds)[,]" in return requesting "sufficient time to retrieve the personal property."[6] Mr. Gouge then sent a second e-mail on September 21, 2017. In this e-mail, Mr. Gouge highlighted five items he considered to be the framework for their negotiations. First, he requested Hillcap confirm the receipt of a wired amount of $10,800 as May's approximate back rent due.[7] Second, he pointed out that Hillcap's "court case [against May] was filed against the wrong property, thus [creating] notice problems."[8] Third, he stated that he did not intend "to file to vacate the default judgment . . . *depending on*"[9] two preconditions, identified in his e-mail as "4 & 5 below."[10]

4. The first precondition (Item 4) sought that May be given "until October 13, 2017, to allow her to remove all of her stuff" and that she be provided "reasonable access [to the Property] during the time from [September 21] until then."[11] The second precondition (Item 5) stated that Hillcap "vacate the default judgment once [May] ha[d] moved everything out."[12] Hillcap agreed to give May until October 13 and to vacate the judgment if rent was paid through October 13. Subsequent e-mail exchanges between the parties' counsel memorialize that May

---

[6] Appendix at A016 (Mr. Gouge's initial e-mail to Hillcap's Counsel, Mr. Zerbato).
[7] Appendix at A019 [hereinafter "Counsel's Sept. 21, 2017 E-mail"].
[8] *Id.* (Specifically, he stated "[t]he lease and court case state 804 Hillside Road[,]" and that May resided at "802 Hillside Road.").
[9] Counsel's Sept. 21, 2017 E-mail. (emphasis added).
[10] *Id.*
[11] *Id.*
[12] *Id.*

4

experienced difficulty accessing the Property between September 22 and the agreed-upon date.[13]

5.     The Property included a house and a barn/garage that contained belongings of both May and Hillcap. On September 28, Mr. Gouge revised his request and asked that Hillcap provide access until November 1 to allow May to empty out both barn and house as it would require movers a total of four days for each.[14] He also asked that barriers/beams and the belongings of Hillcap be moved to give the movers access.[15] That same day, Mr. Zerbato indicated that "time shouldn't be a problem provided the per diem is paid."[16] On October 5, 2017, Mr. Zerbato provided Mr. Gouge with a "breakdown" of the balance owed by May to allow for access.[17] On October 11, 2017, Mr. Gouge requested access to the property for the date of October 14.[18] In return, he provided that his client would issue a check for the sum of $3,000 for the *per diem*, and noted that he anticipated the need for "further access and further per diem."[19] Hillcap did not agree to May's request

---

[13] Appendix at A019; A020; A025; A066; A083.

[14] Appendix at A025 (Mr. Gouge indicated "[his] client asks[ed] to have until November 1 to empty out the barn and house. [Her] movers [would] need about 4 days for each").

[15] *See id.* ("The movers request[ed] that [Hillcap] move the barriers/beams to the barn and move [its] stuff out of the way to allow them access to [May's] stuff.")

[16] Appendix at A029.

[17] Appendix at A035 (Mr. Zerbato indicated that the "Balance Due after [May's] security deposit [was] applied will be $14,088.93 plus +$41.50 court cost +6.75% Post Judgt int per annum").

[18] Appendix at A036.

[19] *Id.*

and granted access to the Property only upon receipt of $10,000.[20] May complied with payment.[21] Continued negotiations ensued as May continued removing her belongings.[22] Limited access times onto the Property coupled with the fact that Hillcap's belongings were allegedly blocking access may have impeded May's efforts. On October 20, 2017, Mr. Zerbato authorized a three day window and "[a]nything left in the property [would] be deemed abandoned."[23] It was not until or about October 30, 2017, that was May able to remove her belongings, at the cost of incurring additional *per diem* rent payable to Hillcap. Throughout, Mr. Gouge made several requests regarding the status of Hillcap's agreement to vacate the judgment.

6.    On November 8, 2017 May filed a Motion to Vacate Default Judgment under Rule 60(b). The JP Court held a Motion Hearing on February 15, 2018 and,

---

[20] *See* Appendix at A041 (Mr. Zerbato confirmed with Hillcap that if May "[paid] $10,000 total ($7000 and the $3000) in certified funds, she [could] have access all day [October 14].”); *see also* Appendix at A056 (Mr. Zerbato indicated that Hillcap was "not willing to extend the time to the 21st but [was] willing to . . . [have] [s]omeone . . . be at the home at 9AM on Saturday, October 14th and return to lock the home on Monday, October 16 at 9AM . . . [and] [was] willing to give [May] [further] access so long as it [was] during the week, and not during a weekend.").

[21] *See* Appendix at A048 (Mr. Gouge informed Mr. Zerbato that "[t]he wire was hit for $10K." He indicated that May was "seeking access from [October 14th] to through [October 21]").

[22] *See* Appendix at A066 (Mr. Gouge indicated that May "[was] frustrated that obtaining access to the property ha[d] been a challenge. That [it was] costing her more money in per diem that she should not have to pay. It benefit[ed] both sides for her to get her stuff out so that the property can be re-let . . . ."); *see also* Appendix at A069 ("Mr. Gouge indicated that "[t]he move [would] be made more difficult from the barn as there [was] stuff there that [was] not [May's].").

[23] Appendix at A064 ("[Hillcap] will allow access on October 24, 26, and 27 ([it could not] accommodate 10/28). No more time after those days. [May] pays per diem for those 3 days, [Hillcap] will agree to vacate the judgment. Anything left in the property will be deemed abandoned.").

after arguments, review of the pleadings and supplemental materials presented, the trial court granted May's Motion to Vacate.[24] The court held May's failure to appear could be considered under JP Court Civil Rule 60(b)(1) as excusable neglect as she resided only periodically at the residence and was not aware of the summary possession proceeding until after the "lockout" was completed.[25] The court further took notice that all service except for the "lockout notice" was made on the incorrect address.[26] It also recognized that May took immediate action when she learned of the lockout and retained an attorney who began negotiations "in order to avoid additional litigation."[27] The court held:

> "[i]t [was] an issue of dispute as to whether [May] removed her items within the timeframes agreed to or whether [Hillcap] actively impeded her efforts. . . . The Court [found] that [May] filed the [motion to vacate the default judgment] in a timely fashion without undue delay after negotiations between the parties were not successful."[28]

7. The JP Court further noted that May had a meritorious defense to judgment since she was not properly served and sought to dispute the amount claimed due.[29] Finding no undue prejudice to Hillcap where possession of the

---

[24] Appendix at A087-88 [hereinafter "JP Court Order"].
[25] JP Court Order at A088.
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

Property was no longer an issue, it granted May an avenue to pursue her remaining debt action.[30]

8. On May 4, 2018, Hillcap appealed the JP Court's decision to CCP. On June 24, 2019, CCP held that the JP Court abused its discretion by failing dismiss May's action with prejudice per the parties' settlement agreement. In so finding, CCP held that May waived her right to contest the default judgment issued against her and—though determined moot—that JP Court employed an improper analysis under JP Court Civil Rule 60(b)(1) instead of 60(b)(6).[31]

9. On July 8, 2019, May appealed. She filed her Opening Brief on October 29, 2019. On November 18, 2019, Hillcap filed its Answering Brief. On December 3, 2019, May filed her Reply Brief. Oral arguments were heard on May 18, 2020.[32] This matter is ripe for review.

## II. STANDARD OF REVIEW

10. In reviewing an appeal of a decision issued by CCP, the Superior Court "is limited to correcting errors of law and determining whether substantial evidence

---

[30] JP Court Order at A088.

[31] *See generally Hillcap I, LLC v. May*, No. CV CPU4-18-002449, 2019 WL 3940881, (Del. Com. Pl. June 24, 2019) (holding that the JP Court abused its discretion by failing: (1) to dismiss the underlying action with prejudice in accordance with the settlement agreement between May and Hillcap and (2) to find that May waived her right to contest the default judgment issued against her, and that the JP Court used the improper analysis under Justice of the Peace Court Civil Rule 60.).

[32] As a result of COVID-19, oral arguments were rescheduled during this time period. *See* ADMINISTRATIVE ORDER NO. 8 EXTENSION OF JUDICIAL EMERGENCY (Del. July 6, 2020).

exists to support the lower court's factual findings."[33] The Court will not disturb a CCP decision without finding an error of law or lack of substantial evidence as support from the record below.[34] "If a party claims that the lower court employed the incorrect legal standard, then a question of law is raised and reviewed *de novo*."[35] Here, the Court turns to the question of whether CCP committed an error of law by substituting its judgment and factual findings for that of the JP Court.

### III. DISCUSSION

11. In considering, Hillcap's appeal, CCP was bound to reviewing the JP Court's decision under an abuse of discretion standard. This standard of review does not permit CCP to consider "whether it would have reached a different conclusion; rather, the inquiry is whether the magistrate's decision '[was] the product of logic, based upon the facts and reasonable deductions to be drawn therefrom.'"[36] Contrary to the findings of the JP Court, CCP reached a different conclusion. In order to have done so, CCP was required to find the JP Court judgment below to have been

[33] *Bailey's Const. Co. v. Clark*, No. CIV.A. 01A-02-004JEB, 2001 WL 1198948, at *1 (Del. Super. Ct. Sept. 19, 2001); *see Janulyn Mckanic-Steers v. Summerfield Homwoners, Associations, Inc.*, No. CV S19A-06-003 RFS, 2020 WL 1227721, at *1 (Del. Super. Ct. Mar. 11, 2020) (quoting *Delaware Inst. of Health Scis., Inc. v. Okorie*, 2011 WL 3481055, at *1 (Del. Super. Ct. Aug. 4, 2011)) ("Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion.").

[34] *Janulyn Mckanic-Steers*, 2020 WL 1227721, at *1 (quoting *Delaware Inst. of Health Scis., Inc. v. Okorie*, 2011 WL 3481055, at *1 (Del. Super. Ct. Aug. 4, 2011)).

[35] *Massey v. Nationwide Assurance Co.*, No. CV N18A-03-003-VLM, 2018 WL 4692488, at *2 (Del. Super. Ct. Sept. 28, 2018).

[36] *Haggerty v. River Terrace Coop. Inc.*, No. CPU4-13-000177, 2013 WL 12201284, at *2 (Del. Com. Pl. May 6, 2013) (quoting *Hurd v. Smith*, 2009 WL 1610516, *1 (Del. Com. Pl. June 10, 2009)).

"manifestly unreasonable, capricious, or not based on recognized rules of law or practice . . . ."[37]  It did not make the required findings.

12.    First, CCP improperly concluded that an agreement existed between May and Hillcap.  CCP fails to refer to or defer to the JP Court's Order granting May's Motion to Vacate under Rule 60(b),[38] where it found that May met her burden for relief.[39]  In granting May's Motion to Vacate, the JP Court expressed that there may have been an agreement but there was a dispute as to whether it was breached. In its decision, the JP Court sets forth in great detail how it arrived at its conclusion and that there existed "an issue of dispute as to whether [May] removed her items within the time frames agreed to or whether [Hillcap] actively impeded her efforts."[40]

---

[37] *Haggerty*, 2013 WL 12201284, at *2.

[38] *See* Del. R. JP. Cts. Civ. R. 60(b)(1) ("[T]he Court may relieve a party . . . from a final judgment, order or proceeding for . . . (1) mistake, inadvertence, surprise or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment.").

[39] JP Court Order at A087 (citing *Lewes Dairy, Inc. v. Walpole*, 1996 WL 111130 (Del. Super. Ct. Jan. 5, 1996); *Marriot Corp. v. Host Marriot Corp.*, 1993 WL 271442, (Del. Ch. July 14, 1993); *Holtzman & Saxe v. Colony Pool Service of Delaware, Inc.*, 1987 WL 6444 (Del. Super. Ct. Jan. 12, 1987)) ("The law is well-settled that a party seeking to vacate a default judgment pursuant to Rule 60(b) must establish the presence of four elements:  (1) that its conduct was that of a reasonably prudent person; (2) that the motion was not brought after an unreasonable delay; (3) the presence of a meritorious defense; and (4) the lack of substantial prejudice to the non-moving party.").

[40] *See generally* JP Court Order.

10

13.     Yet, adopting the three-prong test found in *Schwartz v. Chase*,[41] CCP found that the parties "complied with the original negotiated terms and the subsequent negotiations[,]" and that "the negotiations [between the parties] coupled with the carrying out of its terms [was] sufficient to demonstrate a binding agreement."[42]  It specified "[May] provided payment and [Hillcap] consistently provided access to the premises[,]" holding that all "preconditions for the judgment to be vacated were met when the parties complied with the material terms."[43]  The record does not support these findings.  E-mail exchanges demonstrate that access to the Property became an issue that frustrated efforts to comply.[44]

14.     As such, this Court secondly finds that CCP also improperly held that May waived her rights to contest the default judgment issued against her.  In coming to this conclusion, CCP refers to statements made by Mr. Gouge to Mr. Zerbato, via e-mail and finds that the second e-mail of September 21 was a conditional explicit waiver or that May's conduct served as an implicit waiver to contest the outcome.[45] This is not accurate.

---

[41] 2010 WL 2601608, at *3 (Del. Ch. June 29, 2010) (In order for the Court to determine that an agreement existed, the parties:  (1) must agree upon all material terms; (2) satisfy all preconditions; and (3) must have intended to be bound.).

[42] *Hillcap I, LLC*, 2019 WL 3940881, at *4.

[43] *Id.*

[44] Appendix at A019; A020; A025; A066; A083.

[45] *Hillcap I, LLC*, 2019 WL 3940881, at *1,*5.

11

15.     Though correct that May agreed to forego filing a Motion to Vacate[46] and forewent other legal options,[47] she did so with the understanding that—in return—she would be afforded time to gather her personal belongings both in the first and second e-mails and Hillcap would vacate the judgment. By reading the e-mails out of context, CCP failed to consider the preconditions.[48] Hillcap failed to meet such conditions and potential breaches may have occurred. Additionally, Hillcap failed to vacate May's default judgment after she complied and "moved everything out."[49]

16.     Finally, this Court disagrees with the CCP's finding that the JP Court used the incorrect standard in deciding May's Motion to Vacate. Since it deemed the issue moot, it failed to provide this Court with reviewable analysis. This Court looks to the record before it and finds the JP Court properly considered May's Motion to Vacate under Rule 60(b) in its entirety under both sections (1) and (6).

---

[46] Appendix at A016.

[47] By choosing to negotiate with Hillcap, May forewent the opportunity to seek rent abatement and treble damages on the bases of water issues she had experienced at the property, expenses she had incurred for maintenance issues, and the May 2017 lockout. Furthermore, as pointed out by Mr. Gouge in his Motion to Vacate the Default Judgment, this matter could also have been resolved pursuant to 25 *Del. C.* § 5716 as a good faith dispute, where May never received proper notice of the action filed against her. *See* 25 *Del. C.* § 5716 ("When a final judgment is rendered in favor of the plaintiff in a proceeding brought against a tenant for failure to pay rent and the default arose out of a good faith dispute, the tenant may stay all proceedings on such judgment by paying all rent due at the date of the judgment and the costs of the proceeding or by filing with the court an undertaking to the plaintiff . . . .").

[48] Counsel's Sept. 21, 2017 E-mail ("We are not looking to file the default judgment at this point, *depending on* 4 & 5 below.") (emphasis added).

[49] *Id.*

12

Quoting Rule 60(b)(6) language that "[i]n exercising its discretion to relieve a party from a final judgment, the court generally favors such motions upon almost any reasonable excuse,"[50] JP Court found that May's reasons for not reappearing "could be considered" excusable neglect, primarily given the notice issues caused by Hillcap. Furthermore, May requested relief under Rule 60(b)(6) if the Court finds "any other reason justifying relief from the operation of the judgment."[51] The JP Court properly stated its reasons for so finding. Therefore, the JP Court employed the correct standard.

## CONCLUSION

It appears to this Court that the underlying issues that gave rise to the summary possession and back rent actions resolved in 2017, where notably, five days *before* entry of default was entered against her, tenant May made rent payment to her landlord. Despite having an arguably successful claim against Hillcap for improper service of the eviction proceedings, she hired an attorney to negotiate a settlement in order to avoid litigation and accomplish two things: remove her belongings and vacate her judgment.

As to the former, Hillcap agreed to grant her access only upon payment of $10,000. She complied. With more time required, Hillcap provided her with a final

---

[50] JP Court Order at A087.
[51] *See* DEL. R. JP. CTS. CIV. R. 60(b)(6).

13

three-day window or it would deem her property abandoned. Limited access times onto the Property coupled with the fact that Hillcap's belongings were allegedly blocking access may have impeded her efforts and cost her money. This created the dispute she sought to litigate related to either the condition of the Property or the reasonableness of her access to it. Whether the parties created a basis to argue breach of an agreement or there was never a meeting of the minds, the JP Court correctly held the matter be tried on the merits.

And in order to do so, as to the latter, the JP Court properly and swiftly vacated the default judgment under Rule 60(b). Throughout this litigation, Hillcap sought to enforce what it maintained was an agreement with its tenant. Full performance of such agreement would have obligated it to vacate May's default judgment. It did not do so. Conversely, May successfully obtained the same relief from the JP Court. Regardless of what side of the "v" triumphs, this outcome is the same. The reversal and remand of this action—and its potential continued litigation—should not serve to hold her default judgment in limbo where the record is clear that both sides sought or agreed it be vacated. There is no dispute as to this issue. Thus, on the three-year anniversary of the entry of the judgment, though not swift, justice demands her judgment be vacated.

Upon a *de novo* review of the pleadings, the Court finds that CCP abused its discretion and committed an error of law by substituting its judgment and factual

14

findings for that of the JP Court. Therefore, the decision of CCP reversing the JP Court's decision to vacate the default judgment against May, is **REVERSED** and **REMANDED**, consistent with this Court's ruling. The matter is remanded to JP Court to schedule a trial for May to pursue her remaining action on the merits. The JP Court Order dated April 25, 2018 vacating the default judgment of August 23, 2017 stands.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

oc:　Prothonotary